**LAW OFFICES OF LEO JAMES TERRELL**
Leo James Terrell (SBN 149693)
Email: civil1975@aol.com
8383 Wilshire Blvd., Suite 920
Beverly Hills, California 90211
Telephone: (323) 655-6909
Facsimile: (323) 655-5104

Attorneys for Plaintiff
JO ANN FAY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JO ANN FAY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation; PATRICIA "TISH" HANSEN, an individual; and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | Case No. EDCV10-00834 DDP (DTBx)<br><br>[ASSIGNED TO JUDGE DEAN D. PREGERSON<br>COURTROOM 3]<br><br>**PLAINTIFF'S SEPARATE RULE 26(f) REPORT**<br><br>Complaint Filed:　　09/30/09<br>First Amended Complaint: 05/13/10 |

**PREAMBLE**

　　On September 29, 2010, the parties in the above-entitled matter met and conferred pursuant to Rule 26(f). During the Rule 26(f) meeting, Defendant Costco Wholesale Corporation's counsel, Jill Martin, agreed to prepare the draft of the Joint Rule 26 report. Defendant's counsel did not submit the draft of the Joint Rule 26 report for Plaintiff's counsel, Leo James Terrell, to review and complete until Columbus day on Monday October 11, 2010. On October 13, 2010, Defendant's counsel informed Plaintiff's counsel that the Joint Rule 26 report must be completed by 4:00 p.m. or else Defendant will file its Joint Rule 26 report separately. Plaintiff's counsel contacted Defendant's counsel and informed her

that it was unfair for Defendant's counsel to submit to him the draft of the Joint Rule 26 report on a holiday, Columbus day, October 11, 2010, and only give Plaintiff's counsel less than two (2) days to complete it, which was by 4:00 p.m. of October 13, 2010. In light thereof, Plaintiff's counsel informed Defendant's counsel that because Plaintiff's counsel has been engaged in a Civil Trial entitled Yvette Brown v. County of Los Angeles, Superior Court of California for the County of Los Angeles-Central District, Case No. BC381838, since September 27, 2010 and that the decision of Defendant's counsel to submit to Plaintiff's counsel the Joint Rule 26 draft on Columbus day and two (2) days before it was due, Plaintiff will filed its Joint Rule 26 report separately.

## I. Statement of Case

Plaintiff, Jo Ann Fay, has been an employee of Costco Wholesale Corporation ("COSTCO") since 1998. A few years ago while working at the COSTCO store, Plaintiff purchased some jewelry from Defendant, Patricia Hansen ("HANSEN"), who represented to Plaintiff that said jewelry were genuine Tiffany jewelry. Thereafter, Plaintiff ascertained that said jewelry were fake Tiffany jewelry. Plaintiff reported to the San Bernardino Police and COSTCO corporate office that HANSEN had sold her fake Tiffany jewelry.

In 2007, HANSEN was promoted to temporary manager at COSTCO thereby becoming Plaintiff's superior, and then manager of the marketing team at the COSTCO store in January 2008 thereby becoming Plaintiff's direct supervisor. Thereafter, HANSEN told Plaintiff, in front of other employees, "From now on you will have to deal with me." Thereafter, HANSEN retaliated against Plaintiff for reporting that Defendant Hansen sold her fake Tiffany jewelry in the following manner:

During 2008, HANSEN verbally reprimanded Plaintiff for "time-card violations", which were factually baseless. HANSEN also told Plaintiff that upper management had problems with Plaintiff and Plaintiff will never be promoted to

management because of Plaintiff's reputation of reporting her problems instead of dealing with them through her direct supervisor.

In 2008, Plaintiff arrived at the COSTCO store at about 7:30 a.m. to have a cup of coffee before an 8:00 a.m. scheduled sales appointment. Steve, a COSTCO manager, told Plaintiff that her early presence at the store constituted an "in time-card violation," although this was not true because Plaintiff had a legitimate business reason for being there early that day. Steve stated that he would report Plaintiff for the violation. Plaintiff was later told to report to the manager's office to see HANSEN and Steve. While in the office, Plaintiff was again asked why she was in "time-card violation." Plaintiff again explained that HANSEN had changed her schedule and was aware of Plaintiff's early meeting. HANSEN agreed, but she and Steve stated that it was not on the schedule and that it was Plaintiff's responsibility to ensure that HANSEN made the required changes on the schedule. Thus, HANSEN was scolding Plaintiff for not ensuring that HANSEN did her job correctly. Steve and HANSEN then told Plaintiff she was no longer allowed to supervise in any capacity, and that her supervisor responsibilities had been revoked. Later, HANSEN stated to Plaintiff that Plaintiff was instructed to turn in her supervisor keys because Plaintiff was no longer a supervisor.

Later that day, Plaintiff attempted to assist a customer who was experiencing difficulty using his American Express card. Plaintiff walked the member to a supervisor's register and attempted to sign on at the supervisor's register. However, she found that her cashier number did not work. She attempted three separate times, and then asked HANSEN why her cashier number was not working. HANSEN claimed to have no knowledge of what the problem was. Plaintiff was embarrassed and humiliated in front of the member and other front-end employees. Later, in 2008, Plaintiff found out that someone from COSTCO management had cancelled her supervisor code. Meanwhile, HANSEN disavowed any knowledge as to why this had happened, or of who had made the change.

3

Plaintiff requested a meeting with management on this issue, but the meeting never occurred.

Later in 2008, Plaintiff was asked by Bruce Greenwood, COSTCO corporate manager, and HANSEN to meet with them. They spoke to Plaintiff at the front-end registers and in front of other employees. HANSEN stated that a certain group was "really upset" because Plaintiff did not show up for their event. This was false: The group in question had never confirmed its plans.

Later in 2008, Plaintiff informed COSTCO management that HANSEN and Steve were continuing to deny her supervisor status, refusing to reinstate her supervisor code, and were constantly harassing her about nonexistent "time-card violations." Plaintiff also explained to management that she was the subject of disparate treatment and that statistical data being entered on membership reports was being falsified. She further explained to him that she advised HANSEN that the information on Monday reports was being falsified and that HANSEN responded, "Oh, I don't know why they even do these reports. Everybody just writes in what they want."

Later in 2008, COSTCO management was supposed to issue her a COSTCO e-mail account to conduct marketing business, but management failed and refused to do so.

Later in 2008, Plaintiff was out in the field making field contacts. While away from the COSTCO STORE, Plaintiff received a telephone call from HANSEN, who berated Plaintiff about where she was and why she was not in the building. When Plaintiff attempted multiple times to explain, HANSEN continually interrupted her. When Plaintiff finally managed to explain why she was out of the building, HANSEN asked why she did not call. HANSEN instructed Plaintiff to see HANSEN when Plaintiff returned to the store. When Plaintiff returned, she felt herself getting anxious and dizzy. When she entered the COSTCO store, she went to the pharmacy to check her blood pressure. At that

1 | time it registered at 151/105.

2 |     Plaintiff went to see COSTCO management at the administrative offices and explained that HANSEN's conduct toward her was harassing and retaliatory and only done because Plaintiff reported her to the corporate office. Plaintiff explained that her health was now at issue and that her blood pressure was higher than normal. Plaintiff continued to explain all of the negative conduct she was receiving from HANSEN and that management needed to do something to get HANSEN off her back.

    On or about September 3, 2008, HANSEN approached Plaintiff and stated, "You and I are going to have a talk." HANSEN then closed the door and began berating Plaintiff and chastising her. While she continued to verbally attack Plaintiff, HANSEN's voice was growing louder and louder and Plaintiff felt her blood pressure again beginning to rise as Plaintiff got more and more upset at HANSEN's tirade. Plaintiff told HANSEN that another manager needed to be present for their conversation. HANSEN said, "You're right," but refused the request and continued her verbal attack. HANSEN also told Plaintiff that she knew that Plaintiff had reported her to the police and to the corporate office for selling counterfeit jewelry. By now, Plaintiff had become dizzy and began having extreme chest pains. This physical manifestation caused Plaintiff to slump in her chair. She lifted her hand to signal HANSEN to stop because she was having chest pains. The San Bernardino Fire Department responded to the 9-1-1 call and began treating Plaintiff. She was transported via AMR to Loma Linda University Medical Center, where she was admitted, then later transferred to Kaiser Hospital in Fontana. Plaintiff was later released later on September 4, 2008. On September 8, she had a follow-up appointment with her doctor and was given a return-to-work order that included a stay-away order from HANSEN. Plaintiff returned to work on September 8, 2008. On that day, she discovered that HANSEN had falsely reported the incident as "Jo Ann began having chest pains."

The following events transpired after Plaintiff filed this lawsuit:

On or about November 11, 2009, Plaintiff was re-assigned from her marketing and supervisory position to a position as a check out clerk. At this time Costco was promoting their Executive Membership Campaign and Plaintiff's name badge read "Executive Representative" beneath her name. On or about November 12, 2009, when management saw Plaintiff wearing her name badge, which she was seen wearing the prior summer as a cashier, she was told to change her name tag because she was "not" an Executive Representative. This was told to Plaintiff in front of customers and several other employees. However, several other front-end employees have titles and positions they are not assigned to beneath their badge and have NOT been told to change them.

On or about November 19, 2009, Plaintiff was given her review/evaluation but was not given the customary 2-3 day opportunity to prepare her portion of the review. During this evaluation she was told by the front end supervisor Chris Macatoubal, "Karma's coming back to bite you in the ass," "you were a manager, now you're a cashier," and "you need to learn to obey your elders...you know, listen to, and respect older employees because now you see karma has a way of coming back to you." These comments caused Plaintiff to become emotional and made her cry. Plaintiff refused to participate in her review under those circumstances and left the meeting.

On or about November 20, 2009, Macatoubal told Plaintiff that she had to complete her annual evaluation right then. Plaintiff explained her objections to him and her feelings about his prior comments. Mactoubal completed the evaluation which was negative and Plaintiff refused to sign the evaluation because she was compelled to prepare her part in an unusually short period. She had been off work due to her injury and her annual evaluation would only reflect a 2 ½ month period of time. However, Mactoubal stated that it did not matter and ordered her to discuss her review. When Plaintiff attempted to correct Mactoubal because he had

incorrectly written on her review that she had been a cashier for 11 years, Mactoubal refused to make the correction.

On or about November 21, 2009, Plaintiff found a note posted by Gloria that read, "All reviews must be completed an turned in to payroll 30 days before the due date, you should have the reviews out to the employee 2 months prior to due date so they have time to complete their part and get it back to you in time to do you par.  Let's be pro-active in getting   all reviews done in a timely matter."

On or about December 19, 2009, Plaintiff received a copy of a letter sent to Sedwick from Dr. Buff stating that Plaintiff has a shoulder injury as a result of her employment. On or about January 6, 2010, Plaintiff received a letter from RWI requesting her participation in a job assessment review meeting to discuss modifications needed for her job.  On or about January 7, 2010, when Plaintiff asked Assistant Manager Edward Wallon what happens at such a meeting, he stated that Costco will try to see if there is a position for a "clerk" anywhere in the warehouse. He  also stated that "right now it's January and we don't have anything to accommodate a clerk." He also stated that other local warehouses do not have available clerk positions and that there is a potential that Defendant and Plaintiff would end up parting ways.

Plaintiff has now been relieved of her job duties as a further act of retaliation.   Defendants have failed to conduct the interactive process to accommodate Plaintiff's disability.

## II. **Key Legal Issues**

The parties believe the key legal issues in this case are whether Defendant: (1) retaliated against Plaintiff for filing a police report; (2) discriminated against Plaintiff based on a disability; (3) failed to engage in the interactive process and accommodate Plaintiff; and (4) retaliated against Plaintiff for filing this lawsuit.

## III. **Insurance Coverage**

There is no applicable insurance coverage in this case.

### IV. Realistic Range of Provable Damages

Plaintiff seeks special damages, punitive damages, compensatory damages and general damages in amounts to be determined through proof at trial.

### V. Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. section 1332, on the grounds that there is diversity of citizenship and the amount in controversy exceeds $75,000.

### VI. Law and Motion

The parties do not currently anticipate any motions seeking to add other parties.

Plaintiff intends to file a second amended complaint. Costco requests that the Court set a deadline of November 8, 2010, for Plaintiff to file any amendments to the complaint. Plaintiff opposes Defendants request to set a deadline of November 8, 2010 for Plaintiff to file any amendments to the complaint because of Defendants' continuing and recent acts of retaliation and/or discrimination against Plaintiff and Plaintiff's intent to file another DFEH charge for said continuing and recent acts of retaliation and/or discrimination.

The parties anticipate that Defendant will file a Motion for Summary Judgment. The parties agree that the dispositive motion cut-off date to be set at 45 days before the trial date. If the motion for summary judgment is not granted in its entirety, the parties anticipate filing various motions in limine.

### VII. Manual for Complex Litigation

The parties agree that the Manual for Complex Litigation is not applicable or relevant to this case.

### VIII. Discovery Plan

At this time, the parties do not propose any changes to the limitations on discovery or that any other limitations be imposed, and do not see any need for discovery to be conducted in phases or focused on particular issues. The parties

8

agree that this case is not complex.

Plaintiff has proposed that the parties stipulate that the discovery conducted in State court are no less applicable in Federal court.

The parties intend to serve additional written discovery related to Plaintiff's claims of disability discrimination, retaliation, failure to accommodate, and failure to engage in the interactive process.

The parties anticipate serving additional written discovery related to Plaintiff's new allegations of Defendants' continuing and recent acts of disability discrimination and/or retaliation against Plaintiff, which will be included in Plaintiff's forthcoming second amended complaint.

Defendants have agreed to work with Plaintiff to set a deposition schedule, and Plaintiff has agreed that Defendants will have priority in taking Plaintiff's deposition before all others.

Plaintiff opposes Defendants' proposal of a cut-off date for Plaintiff amending her complaint because of the continuing and recent acts of disability discrimination and/or retaliation committed by Defendants against Plaintiff.

### A. **Protective Order**

The parties have agreed to a protective order to protect the disclosure of confidential information. The protective order was entered by the state court on April 30, 2010.

### B. **Discovery Cut-Off**

Plaintiff proposes a non-expert discovery cut-off date of August/September 2011.

Defendants propose that all non-expert discovery be completed by 120 days prior to trial.

The parties agree and recognize that "discovery cut-off" in this context will refer to the date depositions must be concluded, responses to written discovery are due, and all hearings on non-expert discovery motions are concluded.

### C. Expert Discovery

The parties propose that all expert discovery be completed by 30 days before trial. The parties shall disclose the identity of the witnesses they may use at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence and deliver or mail a copy of the expert report on or before 60 days before trial, in a form that contains information required by FRCP 26(a)(2)(C). The parties shall exchange evidence intended solely to rebut or contradict evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) on or before 45 days before trial, pursuant to FRCP 26(a)(2)(C)(ii).

## IX. Settlement/ L.R. 16-14 Statement of Settlement Mechanism

The parties have discussed settlement, but have not been able to reach a resolution. Both parties remain open to discuss settlement. If the case is not settled or otherwise resolved by the parties, the parties mutually request that Settlement Procedure No. 1 be followed, and that the parties appear before the magistrate judge assigned to the case. The parties will file a notice of election with the Court within 14 days after entry of the scheduling order as required by L.R. 16-15.2.

## X. Trial Estimate

Plaintiff requests a jury trial and the parties anticipate actual trial time will be 5 days after the jury is empanelled.

Plaintiff requests a trial date in November/December 2011.

Costco requests a trial date in June 2011.

DATED: October 21, 2010             LAW OFFICES OF LEO JAMES TERRELL

By  /s/ Leo James Terrell
    Leo James Terrell
    Attorneys for Plaintiff
    JO ANN FAY