Leo James Terrell (SBN 149693)
LAW OFFICES OF LEO JAMES TERRELL
8383 Wilshire Blvd., Suite 652
Beverly Hills, California 90211
Phone: (323) 655-6909
Fax: (323) 655-5104
civil1975@aol.com

Attorneys for Plaintiff JO ANN FAY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JO ANN FAY,<br><br>    Plaintiff,<br><br>    vs.<br><br>COSTCO WHOLESALE CORPORATION, a Washington corporation; PATRICIA "TISH" HANSEN, an individual; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No. EDCV10-00834 DDP(DTBx)<br><br>Complaint Filed:    09/30/09<br>First Amended Complaint Filed: 05/13/10<br><br>[Assigned to Judge Dean D. Pregerson, Courtroom 3]<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES FOR:<br><br>1) Retaliation in Violation of Labor Code Section 1102.5<br>2) Retaliation in Violation of Fair Employment Housing Act<br>3) Violation of Fair Employment Housing Act (Disability Discrimination)<br>4) Violation of Fair Employment Housing Act (Failure to Engage in the Interactive Process)<br>5) Violation of Fair Employment Housing Act (Failure to Accommodate)<br>6) Discrimination in Violation of Labor Code Section 98.<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff JO ANN FAY alleges as follows:

## PARTIES

1.     Plaintiff JO ANN FAY is an adult resident of the County of Riverside, State of California.

1

2.          At all times mentioned herein, Defendant COSTCO WHOLESALE CORPORATION ["COSTCO"], was and is a Washington corporation authorized to conduct business within California, and doing so from its numerous retail warehouse discount stores located throughout Southern California.

3.          At all times herein mentioned, Defendant DOES 1-100, were agents, employees and/or authorized representatives of Defendant CITY.

4.          The true names and capacities – whether individual, corporate or otherwise – of Defendants DOES 1 through 100 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will ask leave of this Court to amend this Complaint to insert their true names and capacities when such information has been ascertained.

5.          In doing the acts and omissions as hereinafter described, Defendants DOES 1-100 were acting in their capacities as agents, employees and/or authorized representatives of Defendant CITY and acting within the scope of such agency, employment and/or representation.

6.          Defendants' wrongful conduct complained of herein occurred in San Bernardino County.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A.    The Start of Plaintiff's Problems**

7.          Plaintiff has been employed by Defendant COSTCO since October 1998, working at its warehouse store located at 1099 East Hospitality Lane in the City of San Bernardino [the "COSTCO STORE"].

8.          A few years ago, while working at the COSTCO STORE, Plaintiff purchased some items of jewelry from a COSTCO manager, PATRICIA "TISH" HANSEN. These pieces of jewelry appeared to be, and were represented by HANSEN to be, authentic items sold by the famous Tiffany jewelers. The jewelry as well as the boxes they came in all appeared to have genuine Tiffany markings on them.

9.          These pieces of jewelry were not connected in any way to jewelry that was for sale at

2

1    the COSTCO STORE; Hansen was selling the "Tiffany" jewelry on her own, to make extra

2    money while working on the clock as a COSTCO employee.

3  10.        Plaintiff bought some pieces of the "Tiffany" jewelry" from HANSEN and in turn

4    gave a few to a friend as Christmas presents.

5  11.        When Plaintiff's friend took the "Tiffany" pieces to a Tiffany store to be sized, the

6    Tiffany personnel notified her that the item were counterfeit and not actually made by Tiffany.

7  12.        When Plaintiff discussed the matter by phone with a Tiffany representative in New

8    Jersey, he advised her to file a police report locally so that she could establish her unknowing

9    and innocent participation in the whole transaction.

10  13.        Plaintiff followed this advice and filed a report with the San Bernardino Police

11    Department, stating that she had purchased items of jewelry from HANSEN that were later

12    determined by the Tiffany company to be counterfeit.  Plaintiff also reported the matter to the

13    COSTCO corporate office and to her superiors at the COSTCO STORE, to explain why she

14    had to take time off from work to file a report with the police.

15  14.        Word spread quickly throughout Plaintiff's COSTCO STORE that Plaintiff had (1)

16    reported HANSEN to the local police for selling counterfeit jewelry, and (2) reported

17    HANSEN to the COSTCO corporate office and to management at the COSTCO STORE for

18    doing the same thing.

19    **B.    Hansen Becomes Plaintiff's Superior And The Trouble Starts**

20  15.        Some time in 2007, Plaintiff joined the marketing team at the COSTCO STORE and

21    did very well at signing up new members for the COSTCO STORE.

22  16.        Some time later in 2007, PATRICIA "TISH" HANSEN was promoted to temporary

23    manager at the COSTCO STORE.  Thus, HANSEN was now Plaintiff's superior.  Ever since

24    this time, HANSEN was Plaintiff's superior with one title or another, and HANSEN made it

25    her goal to retaliate against Plaintiff for reporting her to the police and to her COSTCO

26    superiors.

27  17.        In January 2008, HANSEN was made manager of the marketing team of the COSTCO

28    STORE, making her Plaintiff's direct supervisor.  One of HANSEN's first comments to

1     Plaintiff after this promotion was to say, in front of other employees, "From now on you will

2     have to deal with me."

3   18.      Later that year, Plaintiff was told by management that she would have her marketing

4     job Mondays through Thursdays, and then serve as a front-end supervisor for the COSTCO

5     STORE on Sundays.

6   19.      During 2008, HANSEN verbally reprimanded Plaintiff for "time card violations,"

7     which had no basis in fact.

8   20.      In 2008, HANSEN told Plaintiff that upper management had a few issues with her and

9     that, therefore, Plaintiff would never be promoted to management. This was because Plaintiff

10    had a reputation of going to corporate with her problems instead of dealing with them through

11    her direct supervisor.

12  21.      In 2008, Plaintiff arrived at the COSTCO STORE at about 7:30 a.m. to have a cup of

13    coffee before an 8:00 a.m. scheduled sales appointment. Steve, a COSTCO manager, told

14    Plaintiff that her early presence at the store constituted an "in time-card violation," although

15    this was not true because Plaintiff had a legitimate business reason for being there early that

16    day. Steve stated that he would report Plaintiff for the violation.

17  22.      Plaintiff was later told to report to the manager's office to see HANSEN and Steve.

18    While in the office, Plaintiff was again asked why she was in "time-card violation." Plaintiff

19    again explained that HANSEN had changed her schedule and was aware of Plaintiff's early

20    meeting. HANSEN agreed, but she and Steve stated that it was not on the schedule and that it

21    was Plaintiff's responsibility to ensure that HANSEN made the required changes on the

22    schedule. Thus, HANSEN was scolding Plaintiff for not ensuring that HANSEN did her job

23    correctly.

24  23.      Steve and HANSEN then that Plaintiff was no longer allowed to supervise in any

25    capacity, and that her supervisor responsibilities had been revoked.

26  24.      Later, HANSEN stated to Plaintiff that Plaintiff was instructed to turn in her

27    supervisor keys because Plaintiff was no longer a supervisor.

28  25.      Later that day, Plaintiff attempted to assist a customer who was experiencing difficulty

4

1    using his American Express card. Plaintiff walked the member to a supervisor's register and

2    attempted to sign on at the supervisor's register. However, she found that her cashier number

3    did not work. She attempted three separate times, and then asked HANSEN why her cashier

4    number was not working. HANSEN claimed to have no knowledge of what the problem was.

5    Plaintiff was embarrassed and humiliated in front of the member and other front-end

6    employees.

7    26.        Later, in 2008, Plaintiff found out that someone from COSTCO management had

8    cancelled her supervisor code. Meanwhile, HANSEN disavowed any knowledge as to why

9    this had happened, or of who had made the change.

10    27.        Plaintiff requested a meeting with management on this issue, but the meeting never

11    occurred.

12    28.        Later in 2008, Plaintiff was asked by Bruce Greenwood, COSTCO corporate manager,

13    and HANSEN to meet with them. They spoke to Plaintiff at the front-end registers and in front

14    of other employees. HANSEN stated that a certain group was "really upset" because Plaintiff

15    did not show up for their event. This was false: The group in question had never confirmed its

16    plans.

17    29.        Later in 2008, Plaintiff informed COSTCO management that HANSEN and Steve

18    were continuing to deny her supervisor status, refusing to reinstate her supervisor code, and

19    were constantly harassing her about nonexistent "time-card violations."

20    30.        Plaintiff also explained to management that she was the subject of disparate treatment

21    and that statistical data being entered on membership reports was being falsified. She further

22    explained to him that she advised HANSEN that the information on Monday reports was

23    being falsified and that HANSEN responded, "Oh, I don't know why they even do these

24    reports. Everybody just writes in what they want."

25    31.        Later in 2008, COSTCO management was supposed to issue her a COSTCO e-mail

26    account to conduct marketing business, but management failed and refused to do so.

27    32.        Later in 2008, Plaintiff was out in the field making field contacts. While away from the

28    COSTCO STORE, Plaintiff received a telephone call from HANSEN, who berated Plaintiff

SECOND AMENDED COMPLAINT FOR DAMAGES

1    about where she was and why she was not in the building.  When Plaintiff attempted multiple

2    times to explain, HANSEN continually interrupted her.  When Plaintiff finally managed to

3    explain why she was out of the building, HANSEN asked why she did not call.

4    33.        HANSEN  instructed Plaintiff to see HANSEN  when Plaintiff returned to the store.

5    When Plaintiff returned, she felt herself getting anxious and dizzy.  When she entered the

6    COSTCO STORE, she went to the pharmacy to check her blood pressure.  At that time it

7    registered at 151/105.

8    34.        Plaintiff went to see COSTCO management at the administrative offices and explained

9    that HANSEN's conduct toward her was harassing and retaliatory and only done because

10   Plaintiff reported her to the corporate office.

11   35.        Plaintiff explained that her health was now at issue and that her blood pressure was

12   higher than normal.

13   36.        Plaintiff continued to explain all of the negative conduct she was receiving from

14   HANSEN  and that management needed to do something to get HANSEN off her back.

15   37.        On or about September 3, 2008, HANSEN approached Plaintiff and stated, "You and I

16   are going to have a talk."  HANSEN  then closed the door and began berating Plaintiff and

17   chastising her.

18   38.        While she continued to verbally attack Plaintiff, HANSEN's voice was growing louder

19   and louder and Plaintiff felt her blood pressure again beginning to rise as Plaintiff got more

20   and more upset at HANSEN 's tirade.

21   39.        Plaintiff told HANSEN that another manager needed to be present for their

22   conversation.  HANSEN said, "You're right," but refused the request and continued her verbal

23   attack.  HANSEN also told Plaintiff that she knew that Plaintiff had reported her to the police

24   and to the corporate office for selling counterfeit jewelry.

25   40.        By now, Plaintiff had become dizzy and began having extreme chest pains.  This

26   physical manifestation caused Plaintiff to slump in her chair.  She lifted her hand to signal

27   HANSEN to stop because she was having chest pains.

28   41.        The San Bernardino Fire Department responded to the 9-1-1 call and began treating

6

SECOND AMENDED COMPLAINT FOR DAMAGES

1    Plaintiff. She was transported via AMR to Loma Linda University Medical Center, where she

2    was admitted, then later transferred to Kaiser Hospital in Fontana.

3    42.    Plaintiff was released later on September 4, 2008. On September 8, she had a

4    follow-up appointment with her doctor and was given a return-to-work order that included a

5    stay-away order from HANSEN.

6    43.    Plaintiff returned to work on September 8, 2008. On that day, she discovered that

7    HANSEN had falsely reported the incident as "Jo Ann began having chest pains."

8    **C.    Events Since the Filing of the Law Suit Against the Defendants**

9    44.    On or about November 11, 2009, Plaintiff was re-assigned from her marketing and

10    supervisory position to a position as a check out clerk. At this time Costco was promoting

11    their Executive Membership Campaign and Plaintiff's name badge read "Executive

12    Representative" beneath her name. On or about November 12, 2009, when management saw

13    Plaintiff wearing her name badge, which she was seen wearing the prior summer as a

14    cashier, she was told to change her name tag because she was "not" an Executive

15    Representative. This was told to Plaintiff in front of customers and several other employees.

16    However, several other front-end employees have titles and positions they are not assigned to

17    beneath their badge and have NOT been told to change them.

18    45    On or about November 19, 2009, Plaintiff was given her review/evaluation but was

19    not given the customary 2-3 day opportunity to prepare her portion of the review. During this

20    evaluation she was told by the front end supervisor Chris Macatoubal, "Karma's coming back

21    to bite you in the ass," "you were a manager, now you're a cashier," and "you need to learn to

22    obey your elders...you know, listen to, and respect older employees because now you see

23    karma has a way of coming back to you." These comments caused Plaintiff to become

24    emotional and made her cry. Plaintiff refused to participate in her review under those

25    circumstances and left the meeting.

26    46.    On or about November 20, 2009, Macatoubal told Plaintiff that she had to complete

27    her annual evaluation right then. Plaintiff explained her objections to him and her feelings

28    about his prior comments. Mactoubal completed the evaluation which was negative and

7

SECOND AMENDED COMPLAINT FOR DAMAGES

1   Plaintiff refused to sign the evaluation because she was compelled to prepare her part in an

2   unusually short period. She had been off work due to her injury and her annual evaluation

3   would only reflect a 2 ½ month period of time. However, Mactoubal stated that it did not

4   matter and ordered her to discuss her review. When Plaintiff attempted to correct Mactoubal

5   because he had incorrectly written on her review that she had been a cashier for 11 years,

6   Mactoubal refused to make the correction.

7   47.     On or about November 21, 2009, Plaintiff found a note posted by Gloria that read,

8   "All reviews must be completed an turned in to payroll 30 days before the due date, you

9   should have the reviews out to the employee 2 months prior to due date so they have time to

10   complete their part and get it back to you in time to do you par. Let's be pro-active in getting

11   all reviews done in a timely matter."

12   48.     On or about December 19, 2009, Plaintiff received a copy of a letter sent to Sedwick

13   from Dr. Buff stating that Plaintiff has a shoulder injury as a result of her employment. On or

14   about January 6, 2010, Plaintiff received a letter from RWI requesting her participation in a

15   job assessment review meeting to discuss modifications needed for her job. On or about

16   January 7, 2010, when Plaintiff asked Assistant Manager Edward Wallon what happens at

17   such a meeting, he stated that Costco will try to see if there is a position for a "clerk"

18   anywhere in the warehouse. He also stated that "right now it's January and we don't have

19   anything to accommodate a clerk." He also stated that other local warehouses do not have

20   available clerk positions and that there is a potential that Defendant and Plaintiff would end

21   up parting ways.

22   49.     Plaintiff has now been relieved of her job duties as a further act of retaliation.

23   Defendants have failed to conduct the interactive process to accommodate Plaintiff's

24   disability.

25   50.     In or about February 2010 Plaintiff filed a DFEH charge herein attached as **Exhibit**

26   **1**, for which the Right to Sue Letter is attached as **Exhibit 2**.

27   51.     In or about March 2010, Plaintiff filed a second DFEH charge attached herein as

28   **Exhibit 3**, for which the accompanying Right to Sue letter is attached as **Exhibit 4**.

52.     In or about May 2010, Plaintiff filed a third DFEH charge, attached herein as **Exhibit 5**, for which the accompanying Right to Sue letter is attached as **Exhibit 6**.

53.     Since the filing of Plaintiff's March 15, 2010 DFEH charge and the above-entitled lawsuit, Defendant Costco has committed continuing acts of retaliation and disability discrimination against Plaintiff.  Defendant Costco first offered Plaintiff a position that paid a lower salary than Plaintiff's previous position.  Costco then offered Plaintiff a job as a payroll clerk, with the same salary as Plaintiff's previous position, which Plaintiff accepted.  Management then told Plaintiff that she could not take the position because she did not have payroll experience.  However, the current payroll clerk at San Bernardino also did not have experience and was trained after she was hired.  Defendant Costco failed to post the payroll position, violating its own company policy.  As a result of Defendant Costco's retaliation, Plaintiff has been forced to take the position with a demotion and pay cut from Plaintiff's previous position.

54.     In or about June 2010, Plaintiff filed a Fourth DFEH charge, attached herein as **Exhibit 7**, for which the accompanying Right to Sue letter is attached as **Exhibit 8**.

55.     Since the filing of Plaintiff's June 16, 2010 DFEH charge and the above-entitled lawsuit, Defendant Costco has committed continuing acts of retaliation and disability discrimination against Plaintiff.  Ever since Plaintiff was forced to accept the lower paying position at Costco just to keep her job, Defendant Costco has continuously failed to send job positions to Plaintiff.  When it did send Plaintiff job postings, the closing dates for them had already passed.  Defendant Costco posted these same job openings in the Costco San Bernardino break room and hired two new employees for positions that are within Plaintiff's disability restrictions.  Several times in the month of June and July 2010, Plaintiff did not receive any job positions from Defendant Costco at all.  Corporate management instructed Defendant Costco not to offer the job postings to Plaintiff.

56.     In or about October 4, 2010, Plaintiff filed a Fifth DFEH charge, attached herein as **Exhibit 9**.

57.     Since the filing of Plaintiff's October 4, 2010 DFEH charge and the above-entitled

9

1  lawsuit, Defendant Costco has committed continuing acts of retaliation and disability

2  discrimination against Plaintiff.  As of October 8, 2010 and continuing to date, Plaintiff has

3  not received any job postings from the Defendant.

4  58.    On or about September 17, 2010, Defendant changed Plaintiff's work schedule.

5  Plaintiff previously signed off on working 11:00 a.m. to 8:00 p.m. on Thursdays and Fridays.

6  Defendant changed Plaintiff's schedule to all closing shifts.  Less senior employees are

7  working the 11:00 a.m. to 8:00 a.m. shifts, which are shifts Plaintiff has wanted to work.

8  59.    On or about October 16, 2010, Defendant publicly humiliated Plaintiff by informing

9  Plaintiff in the presence of employees and customers that the door audits/receipts Plaintiff

10  had written were unintelligible and unreadable.  Plaintiff was extremely embarrassed about

11  this public announcement.

12  60.    In October 2010, Defendant provided Plaintiff with her annual performance review,

13  which contained inaccurate and untrue information.

14  61.    In November 2010, a customer had complained that Plaintiff was being rude.

15  Defendant discussed this incident with Plaintiff and recorded this incident in Plaintiff's

16  Employee Performance Log that a customer had complained about Plaintiff's rudeness.

17  However, when other customers would complain that other Defendant employees were being

18  rude, Defendant would not discuss with these other employees that customers had

19  complained that they were being rude nor would Defendant report other employees' being

20  rude in their Employee Performance Log.

21  62.    Defendant has failed to accommodate Plaintiff's medical restrictions.  From August

22  2010 and continuing, Defendant has ignored Plaintiff's repeated request to adhere to her

23  medical restrictions.

24  63.    Plaintiff believes Defendant's acts constitute a pattern and practice of retaliation.

25  **FIRST CAUSE OF ACTION**

26  **RETALIATION IN VIOLATION OF LABOR CODE SECTION 1102.5**

27  **(Against Defendants COSTCO and DOES 1-100)**

28  64.    Plaintiff hereby realleges and incorporates by reference all previous paragraphs,

SECOND AMENDED COMPLAINT FOR DAMAGES

1    inclusive, as if fully set forth herein.

2    65.        Plaintiff contends Section 1102.5 affords her a private right of action.

3    66.        Pursuant to the ruling of *Lloyd v. County of Los Angeles*, attached herein as **Exhibit**

4    **10**, "[t]here is no requirement that a Plaintiff pursue the Labor Code administrative procedure

5    prior to pursuing a statutory cause of action." 172 Cal. App. 4th 320, 323 (Cal. Ct. App.

6    2009).

7    67.        The above-described conduct of Defendants COSTCO and DOES 1-100 constitutes a

8    violation of Labor Code section 1102.5, which states that an employer may not retaliate

9    against an employee for disclosing information to a law enforcement agency where the

10    employee has reasonable cause to believe that such information discloses a violation of a

11    law.

12    68.        Here, these Defendants retaliated against Plaintiff for reporting HANSEN's act of

13    selling counterfeit jewelry, which is a crime.

14    69.        As a direct result of Defendants' unlawful acts and omissions and practices, Plaintiff

15    has suffered monetary loss in the form of lost assignments, lost sales and lost hours of

16    work. She has also suffered humiliation, mental anguish, and physical and emotional

17    distress resulting from the same conduct of Defendants, in such amount as shall be

18    established by proof at time of trial. Plaintiff claims such amount as damages together with

19    prejudgment interest thereon pursuant to Civil Code sections 3287 & 3288, and/or other

20    applicable provision providing for pre-judgment interest.

21                        **SECOND CAUSE OF ACTION**

22                    **RETALIATION IN VIOLATION OF**

23                **FAIR EMPLOYMENT AND HOUSING ACT**

24                **VIOLATION OF GOVERNMENT CODE**

25                            **SECTION 129400**

26                **(Against Defendants COSTCO and DOES 1-100)**

27    70.        Plaintiff hereby realleges and incorporates by reference all previous paragraphs,

28    inclusive, as if fully set forth herein.

SECOND AMENDED COMPLAINT FOR DAMAGES

71.    The above-described conduct of Defendants COSTCO and DOES 1-100 constitutes a violation of the Fair Employment and Housing Act.

72.    On or about November 11, 2009, Plaintiff was re-assigned from her marketing and supervisory position to a position as a check out clerk. At this time Costco was promoting their Executive Membership Campaign and Plaintiff's name badge read "Executive Representative" beneath her name. On or about November 12, 2009, when management saw Plaintiff wearing her name badge, which she was seen wearing the prior summer as a cashier, she was told to change her name tag because she was "not" an Executive Representative. This was told to Plaintiff in front of customers and several other employees. However, several other front-end employees have titles and positions they are not assigned to beneath their badge and have NOT been told to change them.

73.    On or about November 19, 2009, Plaintiff was given her review/evaluation but was not given the customary 2-3 day opportunity to prepare her portion of the review. During this evaluation she was told by the front end supervisor Chris Macatoubal, "Karma's coming back to bite you in the ass," "you were a manager, now you're a cashier," and "you need to learn to obey your elders...you know, listen to, and respect older employees because now you see karma has a way of coming back to you." These comments caused Plaintiff to become emotional and made her cry. Plaintiff refused to participate in her review under those circumstances and left the meeting.

74.    On or about November 20, 2009, Macatoubal told Plaintiff that she had to complete her annual evaluation right then. Plaintiff explained her objections to him and her feelings about his prior comments. Mactoubal completed the evaluation which was negative and Plaintiff refused to sign the evaluation because she was compelled to prepare her part in an unusually short period. She had been off work due to her injury and her annual evaluation would only reflect a 2 ½ month period of time. However, Mactoubal stated that it did not matter and ordered her to discuss her review. When Plaintiff attempted to correct Mactoubal because he had incorrectly written on her review that she had been a cashier for 11 years, Mactoubal refused to make the correction.

75.    On or about November 21, 2009, Plaintiff found a note posted by Gloria that read,
"All [sic] reviews must be completed an turned in to payroll 30 days before the due date,
you should have the reviews out to the employee "2 months" prior to due date so they have
time to complete their part and get it back to you in time to do you par. Let's be pro-active
in getting all reviews done in a timely matter."

76.    On or about December 19, 2009, Plaintiff received a copy of a letter sent to Sedwick
from Dr. Buff stating that Plaintiff has a shoulder injury as a result of her employment. On or
about January 6, 2010, Plaintiff received a letter from RWI requesting her participation in a
job assessment review meeting to discuss modifications needed for her job. On or about
January 7, 2010, when Plaintiff asked Assistant Manager Edward Wallon what happens at
such a meeting, he stated that Costco will try to see if there is a position for a "clerk"
anywhere in the warehouse. He also stated that "right now it's January and we don't have
anything to accommodate a clerk." He also stated that other local warehouses do not have
available clerk positions and that there is a potential that we would end up parting ways.

77.    Plaintiff has now been relieved of her job duties as a further act of retaliation.
Defendants have failed to conduct the interactive process to accommodate Plaintiff's
disability.

78.    As a direct result of each Defendant's unlawful acts and omissions and practices,
Plaintiff has suffered physical injury as outlined above and mental distress in multiple forms
including shock, humiliation, anguish, sleeplessness, loss of appetite, outrage and
embarrassment, to name but a few. The monetary amounts of these symptoms will be
established by proof at time of trial. Plaintiff claims such amount as damages together with
prejudgment interest thereon pursuant to Civil Code sections 3287 & 3288, and/or any other
applicable provision providing for pre-judgment interest.

79.    Further, the conduct of each Defendant was done with such malice that it qualifies
Plaintiff for an award of punitive damages against each, pursuant to Civil Code section
3294, in an amount calculated to dissuade each Defendant from similar conduct in the
future.

### THIRD CAUSE OF ACTION

### VIOLATION OF

### FAIR EMPLOYMENT AND HOUSING ACT

### (DISABILITY DISCRIMINATION)

### VIOLATION OF GOVERNMENT CODE

### SECTION 129400

### (Against Defendants COSTCO and DOES 1-100)

80.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as if fully set forth herein.

81.     The above-described conduct of Defendants COSTCO and DOES 1-100 constitutes a violation of the Fair Employment and Housing Act.

82.     On or about November 11, 2009, Plaintiff was re-assigned from her marketing and supervisory position to a position as a check out clerk. At this time Costco was promoting their Executive Membership Campaign and Plaintiffs name badge read "Executive Representative" beneath her name. On or about November 12, 2009, when management saw Plaintiff wearing her name badge, which she was seen wearing the prior summer as a cashier, she was told to change her name tag because she was "not" an Executive Representative. This was told to Plaintiff in front of customers and several other employees. However, several other front-end employees have titles and positions they are not assigned to beneath their badge and have NOT been told to change them.

83.     On or about November 19, 2009, Plaintiff was given her review/evaluation but was not given the customary 2-3 day opportunity to prepare her portion of the review. During this evaluation she was told by the front end supervisor Chris Macatoubal, "Karma's coming back to bite you in the ass," "you were a manager, now you're a cashier," and "you need to learn to obey your elders...you know, listen to, and respect older employees because now you see karma has a way of coming back to you." These comments caused Plaintiff to become emotional and made her cry. Plaintiff refused to participate in her review under those circumstances and left the meeting.

84.      On or about November 20, 2009, Macatoubal told Plaintiff that she had to complete her annual evaluation right then. Plaintiff explained her objections to him and her feelings about his prior comments. Mactoubal completed the evaluation which was negative and Plaintiff refused to sign the evaluation because she was compelled to prepare her part in an unusually short period. She had been off work due to her injury and her annual evaluation would only reflect a 2 ½ month period of time. However, Mactoubal stated that it did not matter and ordered her to discuss her review. When Plaintiff attempted to correct Mactoubal because he had incorrectly written on her review that she had been a cashier for 11 years, Mactoubal refused to make the correction.

85.      On or about November 21, 2009, Plaintiff found a note posted by Gloria that read, "All [sic] reviews must be completed an turned in to payroll 30 days before the due date, you should have the reviews out to the employee "2 months" prior to due date so they have time to complete their part and get it back to you in time to do you par. Let's be pro-active in getting all reviews done in a timely matter."

86.      On or about December 19, 2009, Plaintiff received a copy of a letter sent to Sedwick from Dr. Buff stating that Plaintiff has a shoulder injury as a result of her employment. On or about January 6, 2010, Plaintiff received a letter from RWI requesting her participation in a job assessment review meeting to discuss modifications needed for her job. On or about January 7, 2010, when Plaintiff asked Assistant Manager Edward Wallon what happens at such a meeting, he stated that Costco will try to see if there is a position for a "clerk" anywhere in the warehouse. He also stated that "right now it's January and we don't have anything to accommodate a clerk." He also stated that other local warehouses do not have available clerk positions and that there is a potential that we would end up parting ways.

87.      Plaintiff has now been relieved of her job duties as a further act of retaliation. Defendants have failed to conduct the interactive process to accommodate Plaintiff's disability.

88.      As a direct result of each Defendant's unlawful acts and omissions and practices, Plaintiff has suffered physical injury as outlined above and mental distress in multiple forms

1    including shock, humiliation, anguish, sleeplessness, loss of appetite, outrage and

2    embarrassment, to name but a few. The monetary amounts of these symptoms will be

3    established by proof at time of trial. Plaintiff claims such amount as damages together with

4    prejudgment interest thereon pursuant to Civil Code sections 3287 & 3288, and/or any other

5    applicable provision providing for pre-judgment interest.

6    89.    Further, the conduct of each Defendant was done with such malice that it qualifies

7    Plaintiff for an award of punitive damages against each, pursuant to Civil Code section

8    3294, in an amount calculated to dissuade each Defendant from similar conduct in the

9    future.

10                        **FOURTH CAUSE OF ACTION**

11                             **VIOLATION OF**

12                  **FAIR EMPLOYMENT AND HOUSING ACT**

13           **(FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS)**

14                    **VIOLATION OF GOVERNMENT CODE**

15                             **SECTION 129400**

16                  **(Against Defendants COSTCOand DOES 1-100)**

17    90.    Plaintiff hereby realleges and incorporates by reference all previous paragraphs,

18    inclusive, as if fully set forth herein.

19    91.    The above-described conduct of Defendants COSTCO and DOES 1-100 constitutes a

20    violation of the Fair Employment and Housing Act.

21    92.    On or about November 11, 2009, Plaintiff was re-assigned from her marketing and

22    supervisory position to a position as a check out clerk. At this time Costco was promoting

23    their Executive Membership Campaign and Plaintiffs name badge read "Executive

24    Representative" beneath her name. On or about November 12, 2009, when management saw

25    Plaintiff wearing her name badge, which she was seen wearing the prior summer as a

26    cashier, she was told to change her name tag because she was "not" an Executive

27    Representative. This was told to Plaintiff in front of customers and several employees.

28    However, several other front-end employees have titles and positions they are not assigned

1    to beneath their badge and have NOT been told to change them.

2   93.    On or about November 19, 2009, Plaintiff was given her review/evaluation but was

3    not given the customary 2-3 day opportunity to prepare her portion of the review. During

4    this evaluation she was told by the front end supervisor Chris Macatoubal, "Karma's coming

5    back to bite you in the ass," "you were a manager, now you're a cashier," and "you need to

6    learn to obey your elders...you know, listen to, and respect older employees because now you

7    see karma has a way of coming back to you." These comments caused Plaintiff to become

8    emotional and made her cry. Plaintiff refused to participate in her review under those

9    circumstances and left the meeting.

10   94.    On or about November 20, 2009, Macatoubal told Plaintiff that she had to complete

11    her annual evaluation right then. Plaintiff explained her objections to him and her feelings

12    about his prior comments. Mactoubal completed the evaluation which was negative and

13    Plaintiff refused to sign the evaluation because she was compelled to prepare her part in an

14    unusually short period. She had been off work due to her injury and her annual evaluation

15    would only reflect a 2 ½ month period of time. However, Mactoubal stated that it did not

16    matter and ordered her to discuss her review. When Plaintiff attempted to correct Mactoubal

17    because he had incorrectly written on her review that she had been a cashier for 11 years,

18    Mactoubal refused to make the correction.

19   95.    On or about November 21, 2009, Plaintiff found a note posted by Gloria that read,

20    "All [sic] reviews must be completed an turned in to payroll 30 days before the due date,

21    you should have the reviews out to the employee "2 months" prior to due date so they have

22    time to complete their part and get it back to you in time to do you par. Let's be pro-active

23    in getting all reviews done in a timely matter."

24   96.    On or about December 19, 2009, Plaintiff received a copy of a letter sent to Sedwick

25    from Dr. Buff stating that Plaintiff has a shoulder injury as a result of her employment. On or

26    about January 6, 2010, Plaintiff received a letter from RWI requesting her participation in a

27    job assessment review meeting to discuss modifications needed for her job. On or about

28    January 7, 2010, when Plaintiff asked Assistant Manager Edward Wallon what happens at

17

1   such a meeting, he stated that Costco will try to see if there is a position for a "clerk"

2   anywhere in the warehouse. He also stated that "right now it's January and we don't have

3   anything to accommodate a clerk." He also stated that other local warehouses do not have

4   available clerk positions and that there is a potential that we would end up parting ways.

5   97.    Plaintiff has now been relieved of her job duties as a further act of retaliation.

6   Defendants have failed to conduct the interactive process to accommodate Plaintiff's

7   disability.

8   98.    As a direct result of each Defendant's unlawful acts and omissions and practices,

9   Plaintiff has suffered physical injury as outlined above and mental distress in multiple forms

10  including shock, humiliation, anguish, sleeplessness, loss of appetite, outrage and

11  embarrassment, to name but a few. The monetary amounts of these symptoms will be

12  established by proof at time of trial. Plaintiff claims such amount as damages together with

13  prejudgment interest thereon pursuant to Civil Code sections 3287 & 3288, and/or any other

14  applicable provision providing for pre-judgment interest.

15  99.    Further, the conduct of each Defendant was done with such malice that it qualifies

16  Plaintiff for an award of punitive damages against each, pursuant to Civil Code section

17  3294, in an amount calculated to dissuade each Defendant from similar conduct in the

18  future.

19                          **FIFTH CAUSE OF ACTION**

20                              **VIOLATION OF**

21                  **FAIR EMPLOYMENT AND HOUSING ACT**

22                       **(FAILURE TO ACCOMMODATE)**

23                  **VIOLATION OF GOVERNMENT CODE**

24                          **SECTION 129400**

25              **(Against Defendants COSTCO and DOES 1-100)**

26  100.    Plaintiff hereby realleges and incorporates by reference all previous paragraphs,

27  inclusive, as if fully set forth herein.

28  101.    The above-described conduct of Defendants COSTCO and DOES 1-100 constitutes a

1    violation of the Fair Employment and Housing Act.

2   102.    On or about November 11, 2009, Plaintiff was re-assigned from her marketing and

3    supervisory position to a position as a check out clerk. At this time Costco was promoting

4    their Executive Membership Campaign and Plaintiffs name badge read "Executive

5    Representative" beneath her name. On or about November 12, 2009, when management saw

6    Plaintiff wearing her name badge, which she was seen wearing the prior summer as a

7    cashier, she was told to change her name tag because she was "not" an Executive

8    Representative. This was told to Plaintiff in front of customers and several other employees.

9    However, several other front-end employees have titles and positions they are not assigned

10    to beneath their badge and have NOT been told to change them.

11   103.    On or about November 19, 2009, Plaintiff was given her review/evaluation but was

12    not given the customary 2-3 day opportunity to prepare her portion of the review. During

13    this evaluation she was told by the front end supervisor Chris Macatoubal, "Karma's

14    coming back to bite you in the ass," "you were a manager, now you're a cashier," and "you

15    need to learn to obey your elders...you know, listen to, and respect older employees because

16    now you see karma has a way of coming back to you." These comments caused Plaintiff to

17    become emotional and made her cry. Plaintiff refused to participate in her review under

18    those circumstances and left the meeting.

19   104.    On or about November 20, 2009, Macatoubal told Plaintiff that she had to complete

20    her annual evaluation right then. Plaintiff explained her objections to him and her feelings

21    about his prior comments. Mactoubal completed the evaluation which was negative and

22    Plaintiff refused to sign the evaluation because she was compelled to prepare her part in an

23    unusually short period. She had been off work due to her injury and her annual evaluation

24    would only reflect a 2 ½ month period of time. However, Mactoubal stated that it did not

25    matter and ordered her to discuss her review. When Plaintiff attempted to correct

26    Mactoubal because he had incorrectly written on her review that she had been a cashier for

27    11 years, Mactoubal refused to make the correction.

28   105.    On or about November 21, 2009, Plaintiff found a note posted by Gloria that read,

1    "All reviews must be completed an turned in to payroll 30 days before the due date, you

2    should have the reviews out to the employee "2 months" prior to due date so they have time

3    to complete their part and get it back to you in time to do you par. Let's be pro-active in

4    getting all reviews done in a timely matter."

5  106.        On or about December 19, 2009, Plaintiff received a copy of a letter sent to Sedwick

6    from Dr. Buff stating that Plaintiff has a shoulder injury as a result of her employment. On

7    or about January 6, 2010, Plaintiff received a letter from RWI requesting her participation in

8    a job assessment review meeting to discuss modifications needed for her job. On or about

9    January 7, 2010, when Plaintiff asked Assistant Manager Edward Wallon what happens at

10    such a meeting, he stated that Costco will try to see if there is a position for a "clerk"

11    anywhere in the warehouse. He also stated that "right now it's January and we don't have

12    anything to accommodate a clerk." He also stated that other local warehouses do not have

13    available clerk positions and that there is a potential that we would end up parting ways.

14  107.        Plaintiff has now been relieved of her job duties as a further act of retaliation.

15    Defendants have failed to conduct the interactive process to accommodate Plaintiff's

16    disability.

17  108.        As a direct result of each Defendant's unlawful acts and omissions and practices,

18    Plaintiff has suffered physical injury as outlined above and mental distress in multiple forms

19    including shock, humiliation, anguish, sleeplessness, loss of appetite, outrage and

20    embarrassment, to name but a few.  The monetary amounts of these symptoms will be

21    established by proof at time of trial.  Plaintiff claims such amount as damages together with

22    prejudgment interest thereon pursuant to Civil Code sections 3287 & 3288, and/or any other

23    applicable provision providing for pre-judgment interest.

24  109.        Further, the conduct of each Defendant was done with such malice that it qualifies

25    Plaintiff for an award of punitive damages against each, pursuant to Civil Code section

26    3294, in an amount calculated to dissuade each Defendant from similar conduct in the

27    future.

28                          **SIXTH CAUSE OF ACTION**

**DISCRIMINATION IN VIOLATION OF LABOR CODE SECTION 98.6**

**(Against Defendants COSTCO and DOES 1-100)**

110.     Plaintiff hereby realleges and incorporates by reference all previous paragraphs, inclusive, as if fully set forth herein.

111.     The above-described conduct of Defendants COSTCO and DOES 1-100 constitutes a violation of Labor Code section 98.6, which states that an employer may not discriminate against an employee for filing a bona fide complaint or claim.

112.     Here, Defendants discriminated against Plaintiff for reporting HANSEN's act of selling counterfeit jewelry and filing bona fide complaints with the DFEH.

113.     As a direct result of Defendants' unlawful acts and omissions, Plaintiff has suffered a monetary loss in the form of lost assignments, lost sales and lost hours of work. She has also suffered humiliation, mental anguish, and physical and emotional distress resulting from the same conduct of Defendants, in such amount as shall be established by proof at time of trial. Plaintiff claims such amount as damages together with prejudgment interest thereon pursuant to Civil Code sections 3287 and 3288, and/or other applicable provisions providing for pre-judgment interest.

**PRAYER**

WHEREFORE, Plaintiff prays judgment against each Defendant, jointly and severally, as follows:

A.     For special damages according to proof;

B.     For compensatory damages according to proof;

C.     For general damages including amounts for emotional distress according to proof;

D.     For prejudgment interest and interest on the sum of damages awarded to the maximum extent permitted by law;

E.     For punitive damages under Civil code section 3294;

F.     For costs of suit herein incurred; and

G.     For such other and further relief as the Court may deem just and proper.

1  DATED: February 23, 2011                          LAW OFFICES OF LEO JAMES TERRELL

2

3

4                                                    By:
                                                     LEO JAMES TERRELL
5                                                    Attorneys for Plaintiff
                                                     JO ANN FAY
6

7

8                              **DEMAND FOR JURY TRIAL**

9
   Plaintiff hereby demands a jury trial for all triable issues.
10

11
   DATED: February 23, 2011                          LAW OFFICES OF LEO JAMES TERRELL
12

13

14                                                   By:
                                                     LEO JAMES TERRELL
15                                                   Attorneys for Plaintiff
                                                     JO ANN FAY
16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE BY MAIL

2

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES:

3

I am employed in the County of Los Angeles, State of California; I am over the age of
4  eighteen years and not a party to the within entitled action; my business address is 8383 Wilshire
Boulevard, Suite 652, Beverly Hills, California 90211.

5

I am readily familiar with the business practice at my place of business for collection and
6  processing of correspondence for mailing with the United States Postal Service. Correspondence
so collected and processed is deposited with the United States Postal Service that same day in the
7  ordinary course of business.

8      On February 23, 2011, I served the within **SECOND AMENDED COMPLAINT** upon the
interested party(s) in said action, by placing a true copy thereof enclosed in a sealed envelope with
9  postage thereon fully prepaid, in the United States mail at Beverly Hills California addressed as
follows:

10

**SEYFARTH SHAW LLP**
11  Eileen Zorc (SBN 233797)
SEYFARTH SHAW LLP
12  2029 Century Park East 3500
Los Angeles CA 90067
13  Telephone: (213) 270-9600
Facsimile: (213) 270-9601

14

15      I declare under penalty of perjury that the foregoing is true and correct.

16      Executed on February 23, 2011, at Beverly Hills, California.

17

18      KAREN CHO

19

20

21

22

23

24

25

26

27

28