O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JO ANN FAY, | ) | Case No. EDCV 10-00834 DDP (DTBx) |
| Plaintiff, | ) ) | [Docket Nos. 44, 55, 72] |
| v. | ) ) | **ORDER GRANTING DEFENDANT'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| COSTCO WHOLESALE CORPORATION, a Washington corporation, | ) ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

    Presently before the court are Defendant Costco Wholesale Corporation's two Motions for Partial Summary Judgment ("Motions"), and Plaintiff Jo Ann Fay's Motion for Summary Judgment ("Cross-Motion"). Having reviewed the parties' moving papers and heard oral argument, the court grants Costco's Motions, denies Fay's Motion, and adopts the following Order.

**I.    BACKGROUND**

    Defendant Costco Wholesale Corporation ("Costco") operates warehouse retail stores, open to members only. Plaintiff Jo Ann Fay ("Fay") worked at a Costco warehouse in San Bernardino, California from 1998 until her discharge in August 2011 for alleged

misconduct.[1]  (Reply to Pl.'s Resp. to Costco's Separate Statement of Undisputed Facts in Supp. of 1st Mot. ("SS1") Nos. 1, 5, 52.)

In late 2006 or early 2007, Fay bought counterfeit jewelry from Costco manager Patricia Hansen.  Fay reasonably believed that Hansen's sale of counterfeit jewelry violated the law.  Fay therefore asked Costco Assistant General Manager Steve Fraga for permission to leave work to file a police report regarding the incident, on January 9, 2007.  Fraga gave Fay permission, on the condition that she return to work to finish her shift.  Because Fay did not return to work to finish her shift, Fraga issued a "Counseling Notice" to Fay.  (SS1 Nos. 7-9.)

A few months after the incident, on June 25, 2007, Costco promoted Fay from Front End Supervisor to Marketing Supervisor. However, in September 2007, Costco told Fay that she had to either return to her position as Front End Supervisor or remain in Marketing as a "Clerk," instead of as a Supervisor, with a $1.00 per hour pay decrease.  Fay chose the latter.  (SS1 Nos. 5, 13-14.) Also in September 2007, Costco promoted Hansen to the position of Marketing Manager.  Fay and six other Costco employees had applied for the position as well.  (Pl.'s Reply to Def.'s Resp. to Pl.'s Statement of Facts in Supp. of Cross-Mot. ("SS3") No. 91.).

Starting approximately ten months later, in June 2008, Hansen verbally counseled Fay on various occasions for arriving early to scheduled shifts and clocking in early.  Then, following a verbal altercation with Hansen in September 2008, Fay was taken to the

---

[1] Because the court grants Costco's Motions, it finds these facts taking the evidence in the light most favorable to Fay and drawing all reasonable inferences in her favor.  Also, the court only addresses those facts relevant to the ten allegedly unlawful acts argued in the parties' moving papers.

2

hospital due to an increase in blood pressure. Fay returned to work a week later with a work restriction from her doctor that she not interact with Hansen. Costco complied with this restriction by transferring Fay to a different location in the warehouse and assigning her different direct supervisors. (SS1 Nos. 18-22.)

Problems persisted, however, as Hansen held a holiday party and gift exchange at her house in late 2008, inviting approximately twenty Costco employees, but not Fay. Also, sometime prior to December 11, 2008, another Costco employee - Assistant Manager Bruce Guzel - allegedly "told [Costco] Investigator [Hallie] Dilloway that Warehouse Manager [Richard] Battistoni told him that he had notes on file that Plaintiff Fay was diagnosed as a schizophrenic." (SS3 Nos. 148, 190 (emphasis omitted).)

As a result of incidents not at issue here, Costco transferred Fay from Marketing to "Front End Clerk (Cashier)" in March 2009. In July 2009, Fay injured her shoulder working as a Cashier. To accommodate Fay's shoulder injury, Costco provided her a temporary position in Member Services, from July 2009 until February 2010. In the meantime, in December 2009, Fay's treating physician issued a report with permanent work restrictions,[2] precluding Fay from returning to her Cashier position. Costco therefore held a meeting with Fay and her attorney on February 3, 2010, to discuss reasonable accommodations for Fay's restrictions. The parties agreed that there were no open positions at Fay's warehouse meeting

---

[2] Specifically, the report provided that "Fay could not lift or carry more than 10 pounds, she could not repetitively reach above shoulder level with her left arm (maximum reaching above shoulder level is 15 minutes per hour, or total 25% of the time), and she could not push or pull heavy items with her left arm." (SS1 No. 31.)

3

her restrictions. Costco therefore placed Fay on a leave of absence starting February 15, 2010, and agreed to send Fay available job postings for eight nearby Costco locations. At the meeting, Costco also "mentioned a food court manager job opening in a neighboring warehouse," but did not offer the position to Fay since "it would be a promotion." Costco did tell Fay that she could "apply for this position." (SS1 Nos. 23-34; SS3 Nos. 195-202; Decl. of Leo James Terrell Re Index of Exs. Nos. 14-62 in Opp'n to 2nd Mot. ("Terrell Decl. 2"), Ex. 34 at 46-47.)

From February 17, 2010, to May 6, 2011, Costco provided Fay with job postings of available positions. Costco failed to send the postings on a few occasions, however, causing Fay to "go a week without getting a posting . . . packet." Costco also hired four people into unposted, entry-level "cart pusher" and "front-end assistant" positions during this period, without "personally notify[ing]" Fay of the openings. Costco "promoted three individuals to front-end supervisor" positions as well, without offering the positions to Fay. Costco did notify Fay of a "Payroll Clerk" position, but told her that she lacked sufficient experience for the job. Fay ultimately accepted a full-time "Member Services Assistant" position at her own warehouse location, on June 30, 2010. Costco permitted Fay to take a planned vacation and start on August 14, 2010. Costco also continued to send Fay job postings, since her Member Services position was at a lower pay scale than Fay's prior Cashier position. (SS1 Nos. 34-37; SS3 Nos. 219-21, 228-33; Decl. of Leo James Terrell Re Index of Exs. Nos. 1-13 in Opp'n to 2nd Mot. ("Terrell Decl. 1"), Ex. 1 at 70-71.)

Fay's duties in Member Services included, among other things, greeting customers, checking receipts, and conducting floor walks. After starting her position, Fay told General Manager Wally Nelson on several occasions that the position was not meeting her work restrictions, because checking receipts required her to repetitively raise her left arm above shoulder level for more than fifteen minutes per hour. Nelson believed, to the contrary, that Fay could use her right arm to check receipts and comply with the work restriction, but told her "we'll do what we can." Several months later, after Fay brought another copy of her doctor's note to Costco, Nelson told Fay that she could perform only floor walks until further notice, to accommodate her restriction. In February 2011, Nelson implemented a rotation schedule, allowing Fay to spend less than fifteen minutes per hour checking receipts. Fay agreed that this rotation met her restriction, in a meeting on June 7, 2011. (SS1 Nos. 40, 44-51; Decl. of Jamie C. Chanin in Supp. of 1st Mot. ("Chanin Decl."), Ex. A at 37.)

It was Costco policy at Fay's warehouse that members were "not supposed to leave the building through the entrance." However, on August 2, 2011, Costco member William Thompson tried to exit the warehouse through the entrance door, where Fay was then working. Thompson approached Fay, to show her his receipt for the item he had purchased. Fay asked Thompson to reenter the warehouse and walk around a fence to use the exit door, but Thompson refused. When Thompson then attempted to walk away from the building, Fay touched his arm, which Thompson pulled away. Thompson became upset and yelled at Fay and another employee. Thompson then complained about the incident to Costco managers working at the time. When

the managers asked Fay whether she had touched Thompson, she denied doing so and stated that Thompson had pushed her. (Reply to Pl.'s Resp. to Costco's Separate Statement of Uncontroverted Facts in Supp. of 2nd Mot. ("SS2") Nos. 6-10; SS3 Nos. 257-58; Terrell Decl. 2, Ex. 57 at 432.)

The managers then investigated the incident by obtaining written statements from Fay, Thompson, and employee witnesses, and by watching video from a warehouse surveillance camera. Fay wrote in her statement that she had not touched Thompson at all. Three employees wrote in their statements that Fay told them that Thompson had pushed her. The video appeared to show Fay touch Thompson's elbow in some manner, and Thompson pulling his arm away. The following week, after further investigation, General Manager Nelson prepared an "Employee Termination Request." In the "Terminating Facts" section, Nelson concluded that Fay grabbed Thompson's arm and lied about the incident, in violation of four Costco policies. Nelson also listed Fay's "Prior Counseling Notices," in a separate section. Costco then terminated Fay on August 10, 2011. (SS2 Nos. 12-20; Terrell Decl. 2, Exs. 14, 62.)

Finally, on September 3, 2011, Fay called Costco because her son planned to return an Xbox video game device purchased from Costco in about 2005 or 2006. A Membership Supervisor informed Fay that her son would receive a full refund. At the warehouse, however, a Refund Clerk and a different Supervisor instead offered Fay's son a refund of approximately one-half the purchase price - the price of a new Xbox at the time. Fay's son refused the offer. The next day, Fay went to return the Xbox herself and obtained a full refund. (SS2 Nos. 23-30.)

During these time periods, Fay filed numerous internal and external complaints, culminating in this action. Fay first brought suit in state court on September 30, 2009, and filed her first complaint with the California Department of Fair Employment and Housing on February 10, 2010. Costco eventually removed the lawsuit to this court in June 2010. Fay filed a Third Amended Complaint ("Complaint") on November 3, 2011. Fay alleges four causes of action under California's Fair Employment and Housing Act ("FEHA"), for retaliation, disability discrimination, failure to engage in the investigative process, and failure to provide reasonable accommodations. Fay also alleges violations of California Labor Code ("Labor Code") section 98.6 and 1102.5, for discrimination and retaliation, and seeks punitive damages.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are drawn in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Id. at 248. No genuine issue of fact exists "[w]here the record taken as a whole could not lead a

rational trier of fact to find for the non-moving party." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings." <u>Anderson</u>, 477 U.S. at 259.  Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a genuine issue for trial.  <u>Celotex</u>, 477 U.S. at 324.  The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. <u>Anderson</u>, 477 U.S. at 252.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," when he or she is ruling on a motion for summary judgment.  <u>Id.</u> at 255.

**B.   FEHA & Labor Code Claims**

Under California law, a plaintiff must first establish a prima facie case of employment discrimination or retaliation.  See <u>Guz v. Bechtel Nat'l, Inc.</u>, 24 Cal. 4th 317, 354-55 (2000).  To establish a prima facie case of disability discrimination, the plaintiff must show: (1) she had a disability; (2) she was otherwise qualified to do her job; and (3) she was subjected to an adverse employment action because of the disability.  <u>Faust v. Cal. Portland Cement Co.</u>, 150 Cal. App. 4th 864, 886 (2007).  Similarly, to establish a prima facie case for retaliation, a plaintiff must establish: (1) she engaged in a protected activity; (2) her employer then subjected her to an adverse employment action; and (3) a causal link existed between the two.  See <u>Yanowitz v. L'Oreal USA, Inc.</u>, 36 Cal. 4th 1028, 1042 (2005).

In California, an adverse employment action must "materially affect the terms, conditions, or privileges of employment to be actionable." Id. at 1052. Courts, however, interpret retaliation actions "broadly," to include "the entire spectrum of employment actions that are reasonably likely to adversely and materially affect an employee's job performance or opportunity for advancement in his or her career." Id. at 1053-54; see also Patten v. Grant Joint Union High Sch. Dist., 134 Cal. App. 4th 1378, 1387-88 (2005) (holding that the same standard governs retaliation claims under Labor Code section 1102.5). But "[m]inor or relatively trivial adverse actions or conduct by employers or fellow employees that, from an objective perspective, are reasonably likely to do no more than anger or upset an employee cannot properly be viewed as materially affecting the terms, conditions, or privileges of employment and are not actionable." Yanowitz, 36 Cal. 4th at 1054.

Once the plaintiff establishes a prima facie case, the burden shifts to the employer to set forth legitimate, nondiscriminatory reasons for its actions. Guz, 24 Cal. 4th at 355-56. The presumption of discrimination then "drops out of the picture," and the plaintiff must show the employer's reasons are pretext for unlawful discrimination. Yanowitz, 36 Cal. 4th at 1042.

It is also a violation of FEHA for an employer "to fail to make reasonable accommodation for the known physical or mental disability" of an employee, or "to fail to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations, if any." Cal. Gov. Code §§ 12940(m), 12926(n). To prevail on summary judgment, an employer must establish that: "(1) reasonable accommodation was offered and

9

refused; (2) there simply was no vacant position within the employer's organization for which the disabled employee was qualified and which the disabled employee was capable of performing with or without accommodation; or (3) the employer did everything in its power to find a reasonable accommodation, but the informal interactive process broke down because the employee failed to engage in discussions in good faith." Jensen v. Wells Fargo Bank, 85 Cal. App. 4th 245, 262-63 (2000). Thus, the reasonable accommodation requirement "entail[s] affirmative action" for the employer, but it "does not require creating a new job, moving another employee, promoting the disabled employee, or violating another employee's rights." Spitzer v. The Good Guys, Inc., 80 Cal. App. 4th 1376, 1389 (2000) (internal quotation marks omitted).

**III. DISCUSSION**

In her moving papers, Fay alleges that ten "acts of retaliation" by Costco support her six claims. The court disagrees, and finds that Costco is entitled to summary judgment on this action.

    **A.   Failure to Exhaust**

As an initial matter, Fay does not dispute that she failed to timely exhaust her administrative remedies as to FEHA, for all acts occurring prior to February 10, 2009. See Cal. Gov. Code § 12960(d). The court still addresses these earlier acts, however, to the extent they are relevant to Fay's Labor Code claims. Labor Code sections 1102.5 and 98.6 protect employees from retaliation for engaging in "whistleblowing" or otherwise exercising their legal rights. Here, Costco does not dispute that Fay engaged in

10

protected activity by reporting the sale of counterfeit jewelry and by filing discrimination and retaliation complaints.

### B. Counseling Notice

Costco first argues that Fay's January 2007 Counseling Notice does not constitute an adverse employment action. The court disagrees. The Notice clearly had the potential to impact Fay's employment, as it was listed on her eventual Employee Termination Request. Costco, however, also offers a legitimate, non-retaliatory explanation for the Notice: that Fay did not return to work after reporting the counterfeit jewelry, as expressly required by Assistant General Manager Fraga. (SS3 No. 9; Terrell Decl. 1, Ex. 2 at 121.[3]). Fay provides no argument or evidence that this explanation for the Notice is pretext. Accordingly, the Counseling Notice does not support Fay's Labor Code claims.

### C. Hansen's Promotion

As the second alleged act of retaliation, Fay points to Costco's promotion of Hansen to Marketing Manager, instead of her. Fay, however, fails to raise a genuine dispute as to Costco's legitimate, non-retaliatory reason for selecting Hansen over the six other applicants, including Fay: that Hansen was the acting Marketing Manager, had performed the position in the past, and had more experience than the other applicants. That Costco might have instead given determinative weight to Hansen's selling of

---

[3] As Fay states in her deposition: "I wanted to leave at the end of my shift. [Fraga] stated that he wanted me to come back, and I thought that made no sense because my shift was almost over and I did not know how long it was going to take at the police department. I did not come back, and the next day Steve Fraga retaliated against me by writing me up."

counterfeit jewelry is immaterial to its legitimate reasons for promoting her.

### D. Verbal Counseling

Fay's third alleged act of retaliation fails at the first step, since verbal counseling - without more - is not an adverse employment action. See Akers v. County of San Diego, 95 Cal. App. 4th 1441, 1457 (2002) ("[A] mere oral or written criticism of an employee . . . does not meet the definition of an adverse employment action under FEHA."). Here, Fay makes no allegation that the verbal counseling had the potential to impact the terms or conditions of her employment.

### E. First Medical Condition

Fay next appears to argue that Costco failed to reasonably accommodate her or engage in the required interactive process - thereby retaliating and discriminating against her as well - with regard to Fay's medical condition involving Hansen. There is no dispute, however, that Costco did in fact reasonably accommodate Fay's restriction, by moving her to a different area of the warehouse and changing her direct supervisors. Accordingly, Costco's actions here do not support Fay's claims.

### F. Holiday Party

As the fifth alleged act of retaliation, Fay points to Hansen's failure to invite her to the employee holiday party and gift exchange at Hansen's home. Without more, it is unlikely that this slight constitutes an adverse employment action. But regardless, Costco offers a legitimate, non-retaliatory explanation for Hansen's decision not to invite Fay: Fay's medical restriction not to interact with Hansen, and their longstanding, negative

personal relationship. Fay makes no argument to rebut Costco's explanation.

### G. Demotion

More substantial, Fay's sixth alleged act of retaliation involves her demotion from Marketing Supervisor to Clerk, with reduced pay. Costco initially argues that Fay "chose" the demotion, so it cannot constitute an adverse employment action. The court disagrees. Fay's only alternative was a transfer out of Marketing, potentially impacting her career opportunities. Nonetheless, Costco has provided a legitimate reason for requiring Fay to choose between the demotion or transfer: that it had no need for and was eliminating the Marketing Supervisor position. Fay's only response is that she was promoted to the position in June 2007 - presumably speculating that the need for the position could not have changed in a few months time. Taking the evidence as a whole, this does not raise a genuine issue as to retaliation. Supporting Costco's explanation, there is no dispute that it never reinstated the Marketing Supervisor position. Also, the alleged act of retaliation took place long after Fay reported the counterfeit jewelry, but before she filed her first complaint against Costco. Fay's demotion therefore cannot support her claims.

### H. Medical Records Disclosure

Although one employee disclosing another employee's medical records might constitute an adverse employment action under certain circumstances, Fay fails to make a prima facie showing of retaliation here. Again, the alleged retaliatory act took place long after Fay reported the counterfeit jewelry, and Fay provides

13

no other evidence of any causal link between the alleged disclosure and the protected act.

### I. Second Medical Condition

Next, Fay claims that Costco failed to reasonably accommodate her or engage in the required interactive process - thereby retaliating and discriminating against her as well - with regard to her shoulder injury. Costco first responded to Fay's injury by providing her a temporary position honoring her work restrictions. There is no dispute that Costco thereby reasonably accommodated Fay's medical condition. Likewise, Costco engaged in the required interactive process to try to find a permanent solution, by holding a job assessment with Fay shortly after she provided the permanent work restriction report from her doctor. Fay, however, contends that Costco then acted unlawfully by not offering her an available Food Court Manager position. Fay also argues that this failure evidences Costco's knowledge of, and failure to disclose, other available positions.

Contrary to Fay's claims, Costco did inform Fay of the Food Court Manager position at the job meeting, but told Fay that the position would constitute a promotion for which she would have to apply. (Terrell Decl. 2, Ex. 34 at 46-47.) Fay offers no argument or evidence that Costco's assertion was untrue, and employers are not required to provide promotions as reasonable accommodations, as discussed. Nor does Fay set forth any other reason to believe that Costco failed to disclose available positions at the meeting.

After the meeting, Costco continued to accommodate Fay by providing her a leave of absence and regular job positions. Although Costco failed to send postings for ten of the sixty weeks

14

at issue, Fay has made no showing that she missed any relevant postings as a result.  Accordingly, Costco's partial failure does not constitute an adverse employment action, and no reasonable factfinder could find that Costco thereby failed to reasonably accommodate Fay, in light of the totality of steps taken by Costco.  Indeed, as discussed, Costco ultimately provided Fay a full-time Member Services Assistant position in an attempt to meet her restrictions, and continued to send her available job positions.

Nonetheless, Fay also complains that Costco did not offer her certain entry-level positions, promotions, or a Payroll Clerk position during this time period.  Costco, however, provides undisputed evidence that Fay's work restrictions precluded her from the entry-level positions. (Terrell Decl. 2, Ex. 34 at 68-69.)  And again, Costco was not obligated to promote Fay as a reasonable accommodation.  Costco also explains and Fay admits that she lacked any experience for the Payroll Clerk position.  (Id. at 50.)  Thus, Costco's failure to offer these positions to Fay do not evidence retaliation, discrimination, or a lack of reasonable accommodation.

Lastly, Fay contends that her new Member Services Assistant position violated her work restrictions, because checking receipts required her to unduly lift her injured arm.  Costco, however, reasonably believed Fay could use her right arm to check receipts.  Fay offers nothing to call into question this attempted solution.  Moreover, after Fay pressed the issue, Costco first implemented temporary, then permanent, changes in her job duties, to ensure full compliance with her work restrictions.  Fay agrees that these accommodations were successful.

In sum, it is undisputed that Costco temporarily accommodated Fay's significant work restriction for almost a year, then held a meeting to try to find a permanent accommodation. Although no appropriate positions were available, Costco provided Fay a leave of absence and regular job postings. Within four months, Costco reinstated Fay in a permanent position, and delayed the start date to accommodate Fay's travel plans. Costco then made significant efforts to accommodate Fay's ongoing concerns as to her new job duties, eventually implementing a permanent change to these duties on Fay's behalf. Accordingly, no reasonable jury could find that Costco thereby failed to reasonably accommodate Fay's shoulder injury, or acted in a retaliatory or discriminatory manner.

**J.  Termination**

As the ninth alleged act of retaliation, Fay points to Costco's ultimate termination of Fay following a customer complaint. Costco has provided a legitimate explanation for the adverse employment action – that Fay touched a Costco member and then lied about it, violating company policies. Fay's only response is that other Costco employees had not been fired for touching Costco members. Costco, however, provides evidence that these employees did so to stop theft, not to redirect a genuine customer with a receipt to the proper exit. Further, Fay does not claim that these other employees were also found to have been dishonest during investigation of the incident. Accordingly – although the court is not unsympathetic to Fay's questioning her termination for a single incident, after fourteen years of employment – she has failed to raise a genuine dispute as to Costco's legitimate explanation.

///

**K.    Xbox Return**

As a final act of retaliation, Fay contends that Costco refused to provide a full refund to her son when he tried to return an Xbox video game device. This allegedly retaliatory act was trivial and cannot constitute an adverse employment action, since Costco provided a full refund to Fay the next day.

**L.    Final Issues**

Because the court finds that none of the alleged acts - individually or taken as a whole - constitute retaliation, discrimination, or failure to accommodate, Costco cannot be held liable for failing to take reasonable steps to prevent any such unlawful conduct, or for punitive damages.

**IV. CONCLUSION**

For the foregoing reasons, Costco is entitled to summary judgment. The court therefore grants Costco's Motions and denies Fay's Cross-Motion.


IT IS SO ORDERED.


Dated: March 2, 2012

DEAN D. PREGERSON
United States District Judge